## THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

**BTL INDUSTRIES, INC.**,

Plaintiff,

v.

**STUDIO EMS, LLC, TERRA JEFFERY, and CHLOE JEFFERY.**

Defendants.

Civil Action No. _____

**DEMAND FOR JURY TRIAL**

## COMPLAINT

Plaintiff BTL Industries, Inc. ("**Plaintiff**" or "**BTL**"), by its attorneys, for its Complaint against Studio EMS, LLC ("**Studio EMS**"), Terra Jeffery, and Chloe Jeffery (collectively, "**Defendants**"), alleges as follows:

## <u>NATURE OF THIS ACTION</u>

1.    This is a civil action by BTL arising out of Defendants' patent infringement in violation of the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

2.    BTL and its affiliates pioneered the application of high-intensity, focused electromagnetic technology in non-invasive aesthetic body-contouring devices. In June 2018, BTL launched the ground-breaking EMSCULPT® aesthetic body-contouring device that uses this technology in the United States, after the device was cleared by the U.S. Food and Drug Administration (FDA). BTL and its

affiliates protected the EMSCULPT® device—and the technology used in the device—with numerous patents and federally registered trademarks and copyrights.

3.     BTL and its affiliates continue to pioneer the application of high-intensity, focused electromagnetic technology in non-invasive aesthetic body-contouring devices. In September 2022, BTL launched EMFACE® aesthetic facial-contouring device. Like the device, BTL protects the EMFACE® device—and the technology used in the device—with numerous patents and federally registered trademarks.

4.     Defendants promote and use devices and offer services in the United States using certain non-invasive face contouring devices that they call "WonderFace." On information and belief, Defendants have and continue to infringe BTL's patents directed to face-contouring devices and methods by offering, selling, and performing facial-contouring services using these devices.

5.     Defendants' infringing and fraudulent conduct not only irreparably harms BTL and the goodwill associated with its brand but may also pose potentially serious health and safety consequences to the public as, on information and belief, Defendants' device is not FDA cleared.

6.     BTL is thus forced to file this action to combat Defendants' unauthorized use of its patents, as well as to protect unknowing consumers from purchasing face-contouring services performed by devices that are not FDA cleared.

7.     Defendants' unfair competition and willful and continuing patent infringement should be enjoined permanently to curb the harm to BTL's reputation and the relevant segment of the public at large. BTL has been, and continues to be, irreparably damaged as a result of Defendants' willful actions and seeks injunctive and monetary relief.

## PARTIES

8.     BTL is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 362 Elm Street, Marlborough, Massachusetts 01752.

9.     On information and belief, Studio EMS is a limited liability company organized and existing under the laws of the State of Georgia, with its principal place of business at 554 Main Street, Gainesville, GA, 30501, and a registered office address of 9405 Lakeside Way, Gainesville, GA, 30506.

10.     On information and belief, Terra Jeffery is an individual and registered agent, director, principal, and/or owner of Studio EMS, who resides in this District.

11.     On information and belief, Chloe Jeffery is an individual, director, principal, and/or owner of Studio EMS, who resides in this District.

## JURISDICTION AND VENUE

12.     This Court has subject-matter jurisdiction over BTL's claims arising under the patent laws of the United States, 35 U.S.C. § 100, *et seq.* and the Lanham

Act, 15 U.S.C. §§ 1051, 1121, pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a)–(b).

13.    This Court has personal jurisdiction over Defendants because they or their employees have committed acts of patent infringement under 35 U.S.C. § 271(a), (b), or (c), and are subject to this Court's jurisdiction under 28 U.S.C. § 1400(b).

14.    This Court has personal jurisdiction over Studio EMS because, on information and belief, it is a Georgia corporation and has its principal place of business in this District.

15.    This Court has personal jurisdiction over Defendant Terra Jeffery because, on information and belief, Terra Jeffery is an owner and moving, conscious force behind Defendant Studio EMS's actions and is a resident of this District.

16.    This Court has personal jurisdiction over Defendant Chloe Jeffery because, on information and belief, Chloe Jeffery is an owner and moving, conscious force behind Defendant Studio EMS's actions and is a resident of this District.

17.    This Court has supplemental jurisdiction over BTL's claims arising under the laws of Georgia, pursuant to 28 U.S.C. § 1367(a), because BTL's state-law claims are so related to BTL's federal law claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

18.    Further, the acts complained of herein occurred in Georgia.

19.    Similarly, the exercise of personal jurisdiction over Defendants comports with the due process requirements of the United States Constitution because:

(a)  Defendants have purposefully established "minimum contacts" with the State of Georgia and this District; and

(b)  the exercise of personal jurisdiction over Defendants will not offend the traditional notions of fair play and substantial justice.

20.    Therefore, this Court has specific and general jurisdiction over Defendants.

21.    Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400 at least because Defendants are residents of and have their principal place of business in this District and are subject to personal jurisdiction in this District.

## **BACKGROUND**

22.    BTL specializes in the innovation, development, and sale of equipment and treatments for the aesthetics industry in the United States. BTL and its affiliates developed proprietary technology that uses high-intensity electromagnetic stimulation to tone and strengthen muscles in targeted areas. BTL applied its technology to develop a series of new and innovative FDA-cleared devices and developed protocols for using the technology for aesthetic therapies. BTL denotes

its products and services that feature this technology with its HIFEM® brand and other trademarks.

23.    The first such device that BTL developed was the EMSCULPT® device, a standalone, non-invasive, FDA-cleared, body-contouring device. *See* **Exhibit A** (BTL Press Release).

24.    In September 2022, BTL released the EMFACE® device (shown below), a standard non-invasive, aesthetic facial-contouring device. *See* **Exhibit B** (BTL EMFACE Press Release). BTL's patent-protected EMFACE® device applies a combination of synchronized radiofrequency and high-intensity facial electromagnetic stimulation (HIFES®). Synchronized radiofrequency heats the dermis to stimulate collagen and elastin production, while HIFES® selectively contracts facial muscles.



25.    BTL has developed specifically configured EMFACE® flexible applicators, tailoring each type of applicator to a specific target area. https://bodybybtl.com/solutions/emface/.



26.    The EMFACE® device uses innovative and patent-protected protocols for aesthetic therapies. BTL's proprietary protocols create heat and repetitive muscle contractions that result in a non-invasive method of toning muscle and face sculpting. https://bodybybtl.com/solutions/emface/.

27.    In March 2022, BTL received clearance from the FDA for its EMFACE® device and began to sell the device in the United States for the improvement of facial toning and reduction of wrinkles. *See id.*

28.    BTL markets and distributes its non-invasive aesthetic facial-contouring EMFACE® device to healthcare professionals, and BTL licenses these healthcare professionals to provide the associated treatment services administered via authentic EMFACE® devices that incorporate its proprietary technology, muscle toning protocols, and flexible applicators in the United States.

29.    BTL's market success and superior performance are by-products of its technological innovations over the past several decades. BTL continues to implement these innovations today. BTL has protected its investment in its innovations and its brand with patents and trademarks. BTL lists the patents that cover its products, including EMSCULPT®, on its website at www.btlnet.com/patents.

**A.    The Asserted Patents**

30.    On June 20, 2023, the United States Patent and Trademark Office ("USPTO") duly and lawfully issued U.S. Patent No. 11,679,255 (the "'**255 Patent**"), entitled "Device and Method for Unattended Treatment of a Patient" to BTL Medical Technologies A.S. A true and correct copy of the '255 Patent is attached hereto as **Exhibit C**. The '255 Patent was exclusively licensed to BTL, and BTL possesses the exclusive right of recovery for any past, present, or future infringements of the '255 Patent, including equitable relief and damages.

31.    On January 23, 2024, the United States Patent and Trademark Office ("USPTO") duly and lawfully issued U.S. Patent No. 11,878,167 (the "'167 **Patent**"), entitled "Device and Method for Unattended Treatment of a Patient" to BTL Medical Technologies A.S. A true and correct copy of the '167 Patent is attached hereto as **Exhibit D**. The '167 Patent was exclusively licensed to BTL, and BTL possesses the exclusive right of recovery for any past, present, or future infringements of the '167 Patent, including equitable relief and damages.

## B.    **Defendants' Unlawful Conduct**

32.    On information and belief, Defendants have since at least December 17, 2024, advertised facial-contouring devices, such as the "WonderFace" (the "Accused Device"). *See*, https://www.instagram.com/p/DDsPImwyGch/?hl=en.

33.    On information and belief, Defendants' activities are ongoing, despite attorneys for BTL informing Defendants that their activities violate BTL's rights.

34.    On information and belief, the Accused Device implements the same or substantially the same technology as the Asserted Patents.

35.    On information and belief, the Accused Device includes or performs each and every limitation of at least one claim of the Asserted Patents, either literally or under the doctrine of equivalents. By offering services using, making, offering to sell, selling, and/or importing into the United States the Accused Device, Defendants have directly infringed, and continue to directly infringe, literally or under the

doctrine of equivalents, one or more claims of the Asserted Patents under 35 U.S.C. § 271(a).

36.    On information and belief, Defendants have been aware of the Asserted Patents since at least April 30, 2025, when BTL informed Defendants via email (studioemsgainesville@gmail.com – the email listed on Studio EMS's website) and FedEx (554 Main Street SW, Gainesville, GA 30501 – Studio EMS's principal place of business). On May 15, 2025, BTL followed up with Defendants by sending a letter via email (studioemsgainesville@gmail.com) and FedEx (554 Main Street SW, Gainesville, GA 30501 – Studio EMS's principal place of business; 9405 Lakeside Way, Gainesville, GA 30506 – Studio EMS's registered office address). True and accurate copies of BTL's April 30, 2025, and May 15, 2025, letters are attached hereto as **Exhibit E**. Having received no response from Defendants, on June 10, 2025, BTL once again attempted to follow up with Defendants via email (studioemsgainesvill@gmail.com). That same day, on June 10, 2025, Defendants responded to BTL's email.

37.    Additionally,    BTL's    "Patent    Labeling"    webpage (https://www.btlnet.com/patents) also lists the Asserted Patents and identifies them as covering the EMSCULPT® and EMFACE® devices.

38.    On information and belief, Defendants have been aware of BTL's specific infringement allegations regarding the Asserted Patents since at least when BTL served a copy of the complaint in this matter.

39.    On information and belief, Defendants actively encourage, promote, distribute, provide instruction for, and support the use of the Accused Device by their customers in manner that directly infringes, either literally or under the doctrine of equivalents, one or more claims of the Asserted Patents under 35 U.S.C. § 271(b), knowing and intending that Defendants' customers will commit acts in such a manner as to directly infringe the Asserted Patents.

40.    Specifically, the images below are representative of Defendants' infringing conduct:



([https://www.instagram.com/p/DDsPImwyGch/?hl=en](https://www.instagram.com/p/DDsPImwyGch/?hl=en); accessed June 25, 2025)



([https://www.instagram.com/studioems_gainesville/reel/DJ4GX6IAKVW/?hl=en](https://www.instagram.com/studioems_gainesville/reel/DJ4GX6IAKVW/?hl=en);

accessed June 25, 2025)



(https://studioems.co/wonderface; accessed June 25, 2025)

41.     On information and belief, Terra Jeffery and Chloe Jeffery are the moving, conscious, and active forces behind Studio EMS's infringing conduct. For example, on information and belief, Terra Jeffery and Chloe Jeffery are the owners and/or directors of Studio EMS. For example, the 2025 "State of Georgia Secretary of State Annual Registration," filed with Georgia's Secretary of State, lists Terra Jeffery as the registered agent. A true and correct copy of the 2025 "State of Georgia Secretary of State Annual Registration" is attached hereto as **Exhibit F**. Additionally, Studio EMS's website describes Studio EMS as "a family-owned business founded by…Terra Jeffery and Chloe Jeffery." https://studioems.co/about-studio-ems.

42.     Terra Jeffery and Chloe Jeffery, as the owners and directors of Studio EMS, are and have been the individuals possessing decision-making authority over

the content of Studio EMS's technical, information, and promotional materials for the Accused Device.

43. On information and belief, Terra Jeffery and Chloe Jeffery have and continue to willfully and maliciously serve as the moving, conscious, and active forces behind Studio EMS's infringing conduct—not least because Terra Jeffery and Chloe Jeffery have had constructive knowledge of BTL's intellectual property at least since April 30, 2025, when counsel for BTL informed Defendants via email and FedEx of their potential infringement of BTL's intellectual property.

44. On information and belief, the Accused Device is not an authentic BTL device. On information and belief, Defendants' Accused Device includes a flexible pad comprising an electrode that is configured to be attached to a patient's body part—such as the face, neck, or submentum—during treatment. On information and belief, the electrode is configured to apply radiofrequency energy to the patient's skin, resulting in radiofrequency heating of the treatment area. On information and belief, the electrode is further configured to deliver pulsed electric currents with a pulse duration between 0.5 microseconds and 500 milliseconds, causing muscle contractions within the treated body part. On information and belief, the devices include a control unit comprising a central processing unit that regulates both the radiofrequency energy and the pulsed electric current during use.

45.    As detailed below, on information and belief, Defendants' Accused Device incorporates a treatment pad that works in concert with two separate power sources—a first generator that emits electromagnetic energy and a second generator that supplies electric current—both governed by an integrated control unit. On information and belief, the pad spans roughly 0.1 cm² to 150 cm² and is formed from a flexible substrate whose underside is oriented toward the patient during use. A conductive lead traverses the pad and couples an underside-mounted electrode, having a surface area of about 1 cm² to 25 cm², to each generator. When the pad is affixed to the targeted body part, the electrode is believed to deliver radiofrequency or other electromagnetic energy that heats the overlying skin while simultaneously channeling electric current deep enough to trigger involuntary muscle contractions in the same region.

46.    On information and belief, the Accused Device is not FDA-cleared.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 11,679,255

47.    BTL repeats and re-alleges each and every allegation above as if fully set forth herein.

48.    The '255 Patent is directed towards a device for treating a patient using radiofrequency energy and pulsed electric current. Exemplary claim 16 of the '255 Patent recites:

A device for treating a patient by radiofrequency energy and a pulsed electric current, the device comprising:

a flexible pad configured to be attached to a body part of a patient, the flexible pad comprising:

a flexible substrate comprising an underside configured to face the body part during a treatment;

an electrode coupled to the underside of the flexible substrate; and

an adhesive coupled to the underside of the flexible substrate and to the electrode,

wherein the electrode is configured to be in contact with the body part via the adhesive;

wherein the electrode is configured to apply radiofrequency energy to the body part to cause heating of the body part, and

wherein the electrode is configured to apply pulsed electric current to the body part to cause a muscle contraction of a muscle within the body part; and

a control unit configured to control the radiofrequency energy and the pulsed electric current to provide the heating and the muscle contraction of the body part during the treatment,

wherein the body part comprises one of a face, a neck, or a submentum.

49.    The Accused Device includes or performs each and every limitation of at least claim 16 of the '255 Patent, either literally or under the doctrine of equivalents.

50.    Defendants have and continue to directly infringe, literally or under the doctrine of equivalents, at least claim 16 of the '255 Patent by making, using, offering to sell, selling, or importing the Accused Device in the United States.

51.    Defendants have induced infringement and continue to induce direct infringement, literally or under the doctrine of equivalents, of at least claim 16 of the '255 Patent, by encouraging, promoting, and instructing customers to use the Accused Device in a manner that directly infringes at least claim 16 of the '255 Patent.

52.    On information and belief, the Accused Device includes the preamble of claim 16 of the '255 Patent, which recites "[a] device for treating a patient by radiofrequency energy and a pulsed electric current." Studio EMS's website for the Accused Device represents that the devices treat patients with radiofrequency energy and pulsed electric current. *See, e.g.*, https://studioems.co/wonderface ("WonderFace alternates between Radiofrequency and High-Intensity Neuromuscular Stimulation technology using ten second increments to tighten skin

and tone facial muscles.").



(https://studioems.co/wonderface; accessed June 25, 2025)

Additionally, Lexter Microelectronic Engineering Systems S.L. (i.e., "**Wonder**") is a manufacturer of the Accused Device WonderFace. Wonder describes the Accused Device as using "synchronized neuromuscular + radiofrequency."

> **First and Only: Synchronized Neuromuscular + Radiofrequency**
>
> **Neuromuscular Emissions:** Electrical stimulation of facial muscles strengthens the musculature and improves tone while increasing blood circulation.
>
> **Bipolar Radiofrequency:** An effective method to stimulate collagen and elastin production, promoting firmer skin and reducing the appearance of wrinkles.

(https://www.wonder.clinic/face; accessed on May 16, 2025)

53.    On information and belief, the Accused Device includes the claimed element "a flexible pad configured to be attached to a body part of a patient." Studio EMS's website states that "[a]pplicators are strategically placed on the forehead, cheeks[,] and neck to deliver targeted treatments." https://studioems.co/wonderface. Additionally, the following screenshot taken from Studio EMS's website (https://studioems.co/wonderface) and Instagram Page (https://www.instagram.com/studioems_gainesville/?hl=en) shows the Accused Device's pads flexing to the contours of the patient's face.



(https://studioems.co/wonderface; accessed June 25, 2025)



(https://www.instagram.com/studioems_gainesville/p/DHymERqgEJA/?hl=en;

accessed June 25, 2025)



(https://www.instagram.com/studioems_gainesville/reel/DJAfRKTyggv/?hl=en;

accessed June 25, 2025)



(https://www.instagram.com/studioems_gainesville/p/DDsPImwyGch/?hl=en;

accessed June 25, 2025)

54.     On information and belief, the Accused Device includes the claimed element "a flexible substrate comprising an underside configured to face the body part during a treatment." As seen in Studio EMS's Instagram posts, the Accused Device's pads are flexing to the contours of the patient's face and include an underside facing the patient's face during treatment.



(https://www.instagram.com/studioems_gainesville/reel/DJAfRKTyggv/?hl=en; accessed June 25, 2025)



([https://www.instagram.com/studioems_gainesville/p/DDsPImwyGch/?hl=en](https://www.instagram.com/studioems_gainesville/p/DDsPImwyGch/?hl=en);

accessed June 25, 2025)

55.    On information and belief, the Accused Device includes the claimed element "an electrode coupled to the underside of the flexible substrate." On information and belief, the Accused Device uses pulsed electric current and flexible substrates.[1] On information and belief, the pulsed electric current requires an electrode to be produced. On information and belief, Defendants' Instagram post depicts the coupling to the electrodes within the Accused Device's flexible pads. For example, as can be seen in Studio EMS's Instagram posts, a patient's face is

---

[1] On information and belief, a reasonable opportunity for further investigation and discovery will show that the Accused Device includes an electrode coupled to the underside of the flexible substrate.

contracting as a result of the applied electric current.



([https://www.instagram.com/studioems_gainesville/reel/DJAfRKTyggv/?hl=en](https://www.instagram.com/studioems_gainesville/reel/DJAfRKTyggv/?hl=en);

accessed June 25, 2025)



([https://www.instagram.com/studioems_gainesville/reel/DK2NvOOgJ_b/?hl=en](https://www.instagram.com/studioems_gainesville/reel/DK2NvOOgJ_b/?hl=en);

accessed June 25, 2025)

Additionally, Wonder describes the Accused Device as having "[r]eusuable [e]lectrodes."

> **Reusable Electrodes:** We advocate for sustainability, offering durable electrodes for multiple sessions.

(https://www.wonder.clinic/face; accessed on May 16, 2025)

56.    On information and belief, the Accused Device includes the claimed element "an adhesive coupled to the underside of the flexible substrate and to the electrode." As shown in Defendants' Instagram posts, the flexible pads are adhered to the patient's face with, on information and belief, an adhesive.[2] This adhesive is what allows the pads to remain adhered to a patient's face as the patient's face contracts from the applied electrical current. On information and belief, the Accused Device includes an adhesive coupled to the underside of the flexible substrate.

---

[2] On information and belief, a reasonable opportunity for further investigation and discovery will show that the Accused Device includes an electrode coupled to the underside of the flexible substrate.



([https://www.instagram.com/studioems_gainesville/reel/DJAfRKTyggv/?hl=en](https://www.instagram.com/studioems_gainesville/reel/DJAfRKTyggv/?hl=en);

accessed June 25, 2025)

57.     On information and belief, the Accused Device includes the claimed element "wherein the electrode is configured to be in contact with the body part via the adhesive." On information and belief, the Accused Device uses pulsed electric current, and that pulsed electric current emanates from electrodes included in the flexible pads. As shown in Defendants' Instagram posts, the electrode is located on the underside of the flexible substrate, which is in contact with the patient's body in order to operate.





(https://studioems.co/wonderface; accessed on May 12, 2025)



(https://www.instagram.com/studioems_gainesville/p/DDsPImwyGch/?hl=en;

accessed June 25, 2025)

58.    On information and belief, the Accused Device includes the claimed element "wherein the electrode is configured to apply radiofrequency energy to the body part to cause heating of the body part." For example, Defendants' website describes the Accused Device as treating patients using radiofrequency energy, and the Accused Device includes electrodes.



(https://studioems.co/wonderface; accessed on May 12, 2025)



(https://www.instagram.com/studioems_gainesville/p/DHymERqgEJA/?hl=en;

accessed June 25, 2025)

Additionally, Wonder describes the electrodes used by the Accused Device. Wonder

also describes the "Synchronized Radiofrequency(RF)" as tightening "the skin by

heating the dermis and increasing collagen and elastin fiber levels."

https://www.wonder.clinic/pdf/WonderFace_en.pdf.



(https://www.wonder.clinic/pdf/WonderFace_en.pdf; accessed on June 25, 2025)

**Reusable Electrodes:** We advocate for sustainability, offering durable electrodes for multiple sessions.

(https://www.wonder.clinic/face; accessed on May 16, 2025)

59.    On information and belief, the Accused Device includes the claimed element "wherein the electrode is configured to apply pulsed electric current to the body part to cause a muscle contraction of a muscle within the body part." On information and belief, the Accused Device treats patients using pulsed electric current. On information and belief, these pulsed electric currents produced by the

Accused Device cause muscle contractions. For example, a video posted on Defendants' Instagram Page (https://www.instagram.com/studioems_gainesville/reel/DJAfRKTyggv/?hl=en) shows a patient's facial muscles contracting upon being subjected to the pulsed electric currents of the Accused Device. Additionally, Wonder describes the Accused Device as able to deliver "1,500 contractions per session."

## Beauty is in the Muscle

Modern aesthetic medicine explains skin aging as the disconnection of the skin from its main support: the muscle. WonderFace aligns with this current scientific trend and subjects facial musculature to 1,500 contractions per session.

(https://www.wonder.clinic/face; accessed on June 25, 2025)



(https://www.instagram.com/studioems_gainesville/reel/DJAfRKTyggv/?hl=en;

accessed June 25, 2025)

60.    On information and belief, the Accused Device includes the claimed element "a control unit configured to control the radiofrequency energy and the pulsed electric current to provide the heating and the muscle contraction of the body part during the treatment." In posts on Defendants' Instagram Page, operators are shown interacting with a tablet to select and modify the Accused Device's radiofrequency energy and pulsed electric current, demonstrating that the Accused Device includes the claimed "control unit."



(https://www.instagram.com/studioems_gainesville/p/DDsPImwyGch/?hl=en;

accessed June 25, 2025)



(https://www.instagram.com/studioems_gainesville/reel/DK2NvOOgJ_b/?hl=en;

accessed June 25, 2025)

61.    On information and belief, the Accused Device includes the claimed element "wherein the body part comprises one of a face, a neck, or a submentum." Studio EMS's website describes the applicators as being "placed on the forehead, cheeks[,] and neck." Additionally, as shown by Defendants' social media posts, the Accused Device is intended to treat various areas of a patient's face, neck, and submentum. For example, the below screenshot from Defendants' Instagram Page shows the Accused Device's flexible pads attached to a patient's face and submentum.





(https://studioems.co/wonderface; accessed June 25, 2025)



(https://www.instagram.com/studioems_gainesville/?hl=en; accessed June 25,

2025)

62.    Defendants' direct infringement of the '255 Patent has been, and

continues to be, willful. On information and belief, Defendants have been aware of

the '255 Patent before the filing of this Complaint and have infringed the '255 Patent

willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271.

63.    Defendants' direct infringement of the '255 Patent has damaged, and continues to damage, BTL in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that BTL would have made but for Defendants' infringing acts as provided by 35 U.S.C. § 284.

64.    BTL will suffer irreparable harm unless Defendants are enjoined from infringing the '255 Patent.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 11,878,167

65.    BTL repeats and re-alleges each and every allegation above as if fully set forth herein.

66.    The '167 Patent is directed towards a device for treating a patient using radiofrequency energy and pulsed electric current. Exemplary claim 1 of the '167 Patent recites:

A device for a treatment of a patient, comprising:

a first generator configured to generate an electromagnetic energy;

a second generator configured to generate an electric current;

a pad having a surface area in a range of 0.1 cm$^2$ to 150 cm$^2$ and configured to be attached to a body part of the patient, the pad comprising:

a substrate comprising an underside configured to face the patient during the treatment;

a conductive lead; and

an electrode having a surface area in a range of 1 cm$^2$ to 25 cm$^2$, coupled to the underside of the substrate, and coupled to the first generator and second generator via the conductive lead; and

a control unit configured to control the first generator and the second generator,

wherein the electrode is configured to be coupled with the body part during the treatment, and

wherein the electrode is configured to provide the electromagnetic energy to the body part, thereby causing heating of skin of the body part, and is configured to provide the electric current to the body part, thereby causing contractions of a muscle within the body part.

67.    The Accused Device includes or performs each and every limitation of

at least claim 1 of the '167 Patent, either literally or under the doctrine of equivalents.

68.     Defendants have and continue to directly infringe, literally or under the doctrine of equivalents, at least claim 1 of the '167 Patent by making, using, offering to sell, selling, or importing the Accused Device in the United States.

69.     Defendants have induced infringement and continue to induce direct infringement, literally or under the doctrine of equivalents, of at least claim 1 of the '167 Patent, by encouraging, promoting, and instructing customers to use the Accused Device in a manner that directly infringes at least claim 1 of the '167 Patent.

70.     On information and belief, the Accused Device includes the preamble of claim 1 of the '167 Patent, which recites "[a] device for a treatment of a patient." Studio EMS's website for the Accused Device represents that the device treats patients with radiofrequency energy and pulsed electric current. *See, e.g.*, https://studioems.co/wonderface ("WonderFace alternates between Radiofrequency and High-Intensity Neuromuscular Stimulation technology using ten second increments to tighten skin and tone facial muscles.").



(https://studioems.co/wonderface; accessed June 25, 2025)

Additionally, Wonder describes the Accused Device as using "synchronized neuromuscular + radiofrequency."

(https://www.wonder.clinic/face; accessed on May 16, 2025)

71.     On information and belief, the Accused Device includes the claimed

element "a first generator configured to generate an electromagnetic energy." On information and belief, the Accused Device includes a "first generator" which generates electromagnetic energy. For example, Defendants' website describes the Accused Device as treating patients using radiofrequency energy. Wonder also describes the "Synchronized Radiofrequency(RF)" as tightening "the skin by heating the dermis and increasing collagen and elastin fiber levels." https://www.wonder.clinic/pdf/WonderFace_en.pdf.



(https://studioems.co/wonderface; accessed June 25, 2025)



([https://www.wonder.clinic/pdf/WonderFace_en.pdf](https://www.wonder.clinic/pdf/WonderFace_en.pdf); accessed on June 25, 2025)

72.    On information and belief, the Accused Device includes the claimed element "a second generator configured to generate an electric current." On information and belief, the Accused Device includes a "second generator" which treats patients using pulsed electric current. Wonder describes the Accused Device as using "synchronized neuromuscular + radiofrequency."

> **First and Only: Synchronized Neuromuscular + Radiofrequency**
>
> **Neuromuscular Emissions:** Electrical stimulation of facial muscles strengthens the musculature and improves tone while increasing blood circulation.
>
> **Bipolar Radiofrequency:** An effective method to stimulate collagen and elastin production, promoting firmer skin and reducing the appearance of wrinkles.

([https://www.wonder.clinic/face](https://www.wonder.clinic/face); accessed on May 16, 2025)

Additionally, a video posted on the Defendants' Instagram Page (https://www.instagram.com/studioems_gainesville/reel/DJAfRKTyggv/?hl=en) shows patients' facial muscles contracting upon being subjected to the pulsed electric currents of the Accused Device. Furthermore, Wonder describes the Accused Device as able to deliver "1,500 contractions per session."



(https://www.instagram.com/studioems_gainesville/reel/DJAfRKTyggv/?hl=en;

accessed June 25, 2025)

**Beauty is in the Muscle**

Modern aesthetic medicine explains skin aging as the disconnection of the skin from its main support: the muscle. WonderFace aligns with this current scientific trend and subjects facial musculature to 1,500 contractions per session.

(https://www.wonder.clinic/face; accessed on June 25, 2025)

73.     On information and belief, the Accused Device includes the claimed element "a pad having a surface area in a range of 0.1 cm$^2$ to 150 cm$^2$ and configured to be attached to a body part of the patient." A reasonable opportunity for further investigation and discovery will show the pads have "a surface area in a range of 0.1 cm$^2$ to 150 cm$^2$." As can be seen by Defendants' posts on Instagram, the Accused Device can be seen as configured to attach to a patient's body.



(https://www.instagram.com/studioems_gainesville/reel/DJAfRKTyggv/?hl=en;

accessed June 25, 2025)



([https://www.instagram.com/studioems_gainesville/p/DDsPImwyGch/?hl=en](https://www.instagram.com/studioems_gainesville/p/DDsPImwyGch/?hl=en);

accessed June 25, 2025)

74.    On information and belief, the Accused Device includes the claimed element "the pad comprising: a substrate comprising an underside configured to face the patient during treatment." For example, the following screenshots taken from Defendants' Instagram show the Accused Device's pads featuring an underside and a top side. Additionally, the Accused Device's pads are seen as flexing to the shape of the patient's face, as well as the underside of the pad being configured to face the patient, and the top side configured to face away from the patient.



(https://www.instagram.com/studioems_gainesville/reel/DJAfRKTyggv/?hl=en;

accessed June 25, 2025)



(https://www.instagram.com/studioems_gainesville/p/DDsPImwyGch/?hl=en;

accessed June 25, 2025)

75.    On information and belief, the Accused Device includes the claimed element "a conductive lead." As may be seen in the following screenshots, the Accused Device includes a conductive lead(s) that couples the device to the electrode(s) in the pad.



(https://www.instagram.com/studioems_gainesville/p/DHymERqgEJA/?hl=en; accessed June 25, 2025)



([https://www.instagram.com/studioems_gainesville/reel/DK2NvOOgJ_b/?hl=en](https://www.instagram.com/studioems_gainesville/reel/DK2NvOOgJ_b/?hl=en);

accessed June 25, 2025)

76.    On information and belief, the Accused Device includes the claimed element "an electrode having a surface area in a range of 1 cm$^2$ to 25 cm$^2$, coupled to the underside of the substrate, and coupled to the first generator and second generator via the conductive lead." For instance, the following screenshots taken from Defendants' Instagram show the Accused Device's pads, including an electrode coupled to the underside of the pad, being placed on a patient's treatment area. The pads are then coupled to the first and second generator via the conductive lead(s).



(https://www.instagram.com/studioems_gainesville/reel/DK2NvOOgJ_b/?hl=en;

accessed June 25, 2025)



(https://www.instagram.com/studioems_gainesville/p/DDsPImwyGch/?hl=en;

accessed June 25, 2025)

Additionally, on information and belief, the electrode is located on the underside of the flexible substrate. As may be seen in Defendants' Instagram video, the electrode is in contact with the treatment area of a patient's body in order to operate, which is seen contracting. On information and belief, the electrode has a surface area in a range of 1 cm$^2$ to 25 cm$^2$.



(https://www.instagram.com/studioems_gainesville/reel/DJAfRKTyggv/?hl=en;

accessed June 25, 2025)

On information and belief, a reasonable opportunity for further investigation and discovery will show an electrode having a surface area in a range of 1 cm$^2$ to 25 cm$^2$, coupled to the underside of the substrate, and coupled to the first generator and second generator via the conductive lead.

77.     On information and belief, the Accused Device includes the claimed

element "a control unit configured to control the first generator and the second generator." In posts on Defendants' Instagram Page, operators are shown interacting with a tablet to select and modify the Accused Device's radiofrequency energy and pulsed electric current, demonstrating that the Accused Device includes the claimed "control unit."



([https://www.instagram.com/studioems_gainesville/p/DDsPImwyGch/?hl=en](https://www.instagram.com/studioems_gainesville/p/DDsPImwyGch/?hl=en); accessed June 25, 2025)



([https://www.instagram.com/studioems_gainesville/reel/DK2NvOOgJ_b/?hl=en](https://www.instagram.com/studioems_gainesville/reel/DK2NvOOgJ_b/?hl=en);

accessed June 25, 2025)

78.     On information and belief, the Accused Device includes the claimed element "wherein the electrode is configured to be coupled with the body part during treatment." On information and belief, the Accused Device uses pulsed electric current, and that pulsed electric current emanates from electrodes included in the flexible pads. As shown in Defendants' Instagram posts, the electrode is located on the underside of the flexible substrate, which is in contact with the patient's body in order to operate. For example, the following screenshots taken from Defendants' Instagram show the Accused Device's pads, including an electrode coupled to the

underside of the pad, being placed on a patient's treatment area. Furthermore, the

electrode is in contact with the treatment area of a patient's body in order to operate.



(https://www.instagram.com/studioems_gainesville/reel/DJAfRKTyggv/?hl=en;

accessed June 25, 2025)



(https://www.instagram.com/studioems_gainesville/p/DDsPImwyGch/?hl=en;

accessed June 25, 2025)

On information and belief, "the electrode is configured to be coupled with the body part during the treatment."

79.    On information and belief, the Accused Device includes the claimed element "wherein the electrode is configured to provide the electromagnetic energy to the body part, thereby causing heating of skin of the body part, and is configured to provide the electric current to the body part, thereby causing contractions of a muscle within the body part." Studio EMS's website for the Accused Device represents that the devices treat patients with radiofrequency energy and pulsed electric current. *See, e.g.*, https://studioems.co/wonderface ("WonderFace alternates between Radiofrequency and High-Intensity Neuromuscular Stimulation technology using ten second increments to tighten skin and tone facial muscles."). Additionally, Wonder describes the Accused Device as using "synchronized neuromuscular + radiofrequency."



(https://studioems.co/wonderface; accessed June 25, 2025)

### First and Only: Synchronized Neuromuscular + Radiofrequency

**Neuromuscular Emissions:** Electrical stimulation of facial muscles strengthens the musculature and improves tone while increasing blood circulation.

**Bipolar Radiofrequency:** An effective method to stimulate collagen and elastin production, promoting firmer skin and reducing the appearance of wrinkles.

(https://www.wonder.clinic/face; accessed on May 16, 2025)

Additionally, Wonder describes the electrodes used by the Accused Device. Wonder also describes the "Synchronized Radiofrequency(RF)" as tightening "the skin by heating the dermis and increasing collagen and elastin fiber levels." https://www.wonder.clinic/pdf/WonderFace_en.pdf.

54



(https://www.wonder.clinic/pdf/WonderFace_en.pdf; accessed on June 25, 2025)

Additionally, on information and belief, the Accused Device treats patients using pulsed electric current. On information and belief, these pulsed electric currents produced by the Accused Device cause muscle contractions. For example, a video posted on the Defendants' Instagram Page (https://www.instagram.com/studioems_gainesville/reel/DJAfRKTyggv/?hl=en) shows a patient's facial muscles contracting upon being subjected to the pulsed electric currents of the Accused Device. Additionally, Wonder describes the Accused Device as able to deliver "1,500 contractions per session."



([https://www.instagram.com/studioems_gainesville/reel/DJAfRKTyggv/?hl=en](https://www.instagram.com/studioems_gainesville/reel/DJAfRKTyggv/?hl=en);

accessed June 25, 2025)

## Beauty is in the Muscle

Modern aesthetic medicine explains skin aging as the
disconnection of the skin from its main support: the
muscle. WonderFace aligns with this current scientific
trend and subjects facial musculature to 1,500
contractions per session.

([https://www.wonder.clinic/face](https://www.wonder.clinic/face); accessed on June 25, 2025)

80.    Defendants' direct infringement of the '167 Patent has been, and

continues to be, willful. On information and belief, Defendants have been aware of

the '167 Patent before the filing of this Complaint and have infringed the '167 Patent

willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271.

81.    Defendants' direct infringement of the '167 Patent has damaged, and continues to damage, BTL in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that BTL would have made but for Defendants' infringing acts as provided by 35 U.S.C. § 284.

82.    BTL will suffer irreparable harm unless Defendants are enjoined from infringing the '167 Patent.

## PRAYER FOR RELIEF

WHEREFORE BTL requests entry of judgment against Defendants as follows:

A.    A judgment that Defendants have infringed one or more claims of the Asserted Patents in violation of 35 U.S.C. § 271(a)–(c);

B.    An award of damages not less than $125,000 for infringement of the Asserted Patents, with said damages to be trebled because of the intentional and willful nature of Defendants' infringement, as provided by 35 U.S.C. § 284;

C.    A judgment that Defendants have willfully infringed one or more claims of the Asserted Patents;

D.    A determination that this case is "exceptional" under 35 U.S.C. § 285 and an award of BTL's reasonable attorneys' fees;

E.      An order permanently enjoining Defendants, their officers, directors, employees, agents, and all persons acting in concert with them, from infringing the Asserted Patents;

F.      An award of damages against Defendants as a result of their wrongful acts against BTL in an amount to be proved at trial;

G.      An award of any and all of Defendants' profits arising from the foregoing acts;

H.      An award of pre-and post-judgment interest of any monetary damages at the highest rate allowed by law;

I.      An award of BTL's costs and expenses in this action; and

J.      For such other relief as the Court may deem just and proper.

## **JURY DEMAND**

BTL hereby demands a trial by jury on all issues so triable.

Dated: July 24, 2025                Respectfully submitted,

                                    /s/ *Nathan I. North*
                                    Nathan I. North (GA BPR# 728779)
                                    Patterson Intellectual Property Law, P.C.
                                    1600 Division Street, Suite 500
                                    Nashville, TN 37203
                                    Telephone: (615) 242-2400
                                    Facsimile: (615) 242-2221
                                    nin@iplawgroup.com

                                    *Attorney for Plaintiff BTL Industries, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel certifies that the foregoing has been prepared in Times New Roman, 14 point, one of the four fonts and points approved by the Court in L.R. 5.1C.

<u>/s/ *Nathan I. North*</u>
Nathan I. North (GA BPR# 728779)
Patterson Intellectual Property Law, P.C.
1600 Division Street, Suite 500
Nashville, TN 37203
Telephone: (615) 242-2400
Facsimile: (615) 242-2221
nin@iplawgroup.com

*Attorney for Plaintiff BTL Industries, Inc.*